IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSUS USA, INC.; SENSUS WORLDWIDE LIMITED; and SENSUS WORLDWIDE HOLDINGS LIMITED,<br><br>        Plaintiffs,<br><br>v.<br><br>BENJAMIN P. FRANKLIN, JR.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 15-742 UNA |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND IN FURTHER
SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

PROCTOR HEYMAN ENERIO LLP
Samuel T. Hirzel (# 4415)
Aaron M. Nelson (# 5941)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300

-and-

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Kevin S. Joyner (*pro hac*)
N.C. Bar No. 25605
Phillip J. Strach (*pro hac*)
N.C. Bar No. 29456
J. Allen Thomas (*pro hac*)
N.C. Bar No. 40119
4208 Six Forks Road, Suite 1100
Raleigh, N.C. 27609
Telephone:  (919) 787-9700
Facsimile:  (919) 783-9412
Kevin.Joyner@ogletreedeakins.com
Phil.Strach@ogletreedeakins.com
Allen.Thomas@ogletreedeakins.com

Dated:  September 25, 2015                *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

      A.   Sensus' business and the AMI market. ............................................................ 3

      B.   Sensus' purchase of AMDS. ............................................................................ 4

      C.   Franklin's Agreement. ...................................................................................... 4

      D.   Franklin's Employment with Sensus and Subsequent Resignation. ............... 5

      E.   Franklin's Employment with SSN. .................................................................. 5

STANDARD OF REVIEW ........................................................................................... 6

I.     Motion to Dismiss for *Forum Non Conveniens*. ................................................ 6

II.    Motion for Temporary Restraining Order. .......................................................... 6

ARGUMENT ................................................................................................................. 6

I.     This Court Is the Proper Forum to Hear the Parties' Dispute .............................. 6

    A.  The forum selection clause is valid.................................................................. 7

    B.  The forum selection clause bars Franklin's motion to dismiss....................... 8

II.    The Court Should Deny Franklin's Motion to Stay ............................................ 10

III.   The Court Should Temporarily Enjoin Franklin's Willful Misconduct ............. 10

    A.  Sensus is likely to succeed on the merits of its claim ..................................... 10

       i.   Delaware law applies to the Agreement.................................................. 11

          1.   Delaware has a substantial relationship to the parties and the dispute ............ 12

          2.   Georgia does not have a materially greater interest than Delaware in the parties' dispute ...................................................................................... 13

3.   Delaware law is not contrary to a fundamental policy of Georgia law ...........15

ii.    The Agreement is enforceable under Delaware law.............................................16

iii.    The Agreement has not "lapsed" .........................................................................17

B.  Sensus will suffer irreparable harm if Franklin is not enjoined...................................17

C.  The balance of harms favors entering a temporary injunction ....................................19

CONCLUSION..............................................................................................................................20

## TABLE OF AUTHORITIES

Cases:

*Am. Control Sys., Inc. v. Boyce,*
    303 Ga. App. 664, S.E.2d. 141 (2010) ................................................................................... 16

*Am. Homepatient, Inc. v. Collier,*
    2006 WL 1134170 (Del. Ch.). ....................................................................................... 16-17

*Abry Partners V, L.P. v. F&W Acquisition LLC,*
    891 A.2d 1032 (Del. Ch. 2006) ................................................................................. 11, 15

*Atlantic Marine Const. Co. v. U.S. Dist. Court for the Western Dist. of TX,*
    134 S.Ct. 568 (2013) .................................................................................................. 6, 7, 8

*Bell Helicopter Textron , Inc. v. C&C Helicopter Sales, Inc.,*
    295 F. Supp. 2d 400 (D. Del. 2002) ................................................................................ 9

*Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) .................................................................................................... 7, 8, 9

*Burge v. City of Dover,*
    1987 WL 12311 (Del. Ch.) ............................................................................................ 19

*Burton v. PFPC Worldwide, Inc.,*
    2003 WL 22682327 (Del. Ch.) ...................................................................................... 20

*Coface Collections North Am., Inc. v. Newton,*
    430 F. App'x 162 (3d Cir. 2011) ......................................................................... *passim*

*Drumheller v. Drumheller Bag & Supply, Inc.,*
    204 Ga. App. 623, 420 S.E.2d 331 (1992) ................................................................... 16

*Foster v. Chesapeake Ins. Co.,*
    933 F.2d 1207 (3d Cir. 1991) .......................................................................................... 7

*Haft v. Dart Group Corp.,*
    841 F. Supp. 549 (D. Del. 1993) ................................................................................... 17

*Hicks v. Doors By Mike,*
    260 Ga. App. 407, 579 S.E.2d 833 (2003) ................................................................... 16

*Hough Associates, Inc. v. Hill,*
    2007 WL 148751 (Del. Ch.) .......................................................................................... 18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)...................................................................................................11

*Kos Pharms., Inc. v. Adrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)...........................................................................................6

*Martinez v. DaVita, Inc.*,
  266 Ga. App. 723, 598 S.E.2d 334 (2004)...............................................................16

*Sampson v. Murray*,
  415 U.S. 61 (1974) ......................................................................................................19

*Simplexity, LLC v. Zeinfeld*,
  2013 WL 1457726 (Del. Ch.) ....................................................................................18

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ........................................................................................................6

*Total Holdings USA, Inc. v. Curran Composites, Inc.*,
  999 A.2d 873 (Del. Ch. 2009) ...................................................................................12

Statutes:

28 U.S.C. § 1404(a) ............................................................................................................7
6 *Del*. C. § 2708(a)...........................................................................................................12

Other Authority:

Restatement (Second) of Conflict of Laws, § 187......................................................11, 12, 13, 14
Restatement (Second) of Conflict of Laws, § 188................................................................ 14-15

iv

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Benjamin P. Franklin, Jr. ("Franklin"), former Director of Business Development and Director of Sales for Sensus USA, Inc., Sensus Worldwide Limited, and Sensus Worldwide Holdings Limited (collectively "Sensus"), is presently working for Sensus' direct competitor, Silver Spring Networks ("SSN"), as its Vice President of Sales, Southeast, in direct violation of the Employment and Non-Interference Agreement ("Agreement") he entered into with Sensus. Franklin entered into his Agreement with Sensus in conjunction with Sensus' purchase of Advanced Metering Data Systems, LLC ("AMDS"), a company that Franklin was a founder, shareholder, and principal executive. Franklin received a substantial financial benefit – in excess of one million dollars – as a result of Sensus' purchase of AMDS. (Boyle Dec. ¶ 7).

Franklin's Agreement contains a valid forum selection clause and choice of law provision designating Delaware as the appropriate forum for this matter and Delaware law to govern the dispute. Franklin baselessly asks the Court to ignore these binding terms and allow a Georgia court to determine these issues under Georgia law. However, the Superior Court in Fulton County, Georgia recently held that this Court is the proper venue and jurisdiction to determine these issues. Franklin has no intention of honoring the Agreement. Accordingly, an order is needed to restrain Franklin from further breaching his Agreement.

## NATURE AND STAGE OF THE PROCEEDINGS

Because of the irreparable financial harm and damage to Sensus' goodwill and other legitimate business interests that will result if Franklin is permitted to work for a direct competitor and use Sensus' confidential and proprietary business information for the benefit of his new employer, on August 24, 2015, Sensus filed its Complaint in this action and accompanying Motion for Temporary Restraining Order against Franklin, seeking to enforce the Agreement in the Court

of Chancery of the State of Delaware.  On August 26, 2015, Franklin removed this action to the United States District Court for the District of Delaware.

Two days later, on August 28, 2015, Franklin and SSN filed a civil suit against Sensus in the Superior Court of Fulton County, Georgia ("Georgia Litigation").  In the Georgia Litigation, Franklin and SSN sought a declaratory judgment and injunctive relief with respect to the covenants contained in Franklin's Agreement.  In particular, they asked the Georgia state court to assert jurisdiction over the dispute and rule that the Agreement violated Georgia law.  After a hearing on September 9, 2015 and consideration of the parties' legal briefs, the Georgia court entered an Order denying Franklin and SSN's Motion for Temporary Restraining Order and staying the Georgia Litigation pending resolution of this matter.  (*See* D.I. 14.)

On September 14, 2015, Franklin filed a Motion to Dismiss or, in the alternative, to Stay Proceedings.  (D.I. 7).  The supporting documents included a brief in support of Franklin's Motion and in opposition to Sensus' Motion for Temporary Restraining Order.  Pursuant to the Court's Order on September 18, 2015, (D.I. 15), Sensus files this brief in response to Franklin's Opening Brief and in further support of its Motion for Temporary Restraining Order.

## STATEMENT OF FACTS

Sensus is a Delaware corporation headquartered in North Carolina.  It manufactures advanced metering systems and automatic metering infrastructure for water, gas, and electric utilities.  (Boyle Dec. ¶ 5).[1]  Sensus is a national company whose customers are generally large public utilities offering exclusive utility service for a state or region.

Franklin was a Senior Director of Sales at Sensus until his resignation on August 17, 2015. Franklin joined Sensus in 2006 as part of Sensus' purchase of the assets of a Louisiana based

---

[1] Sensus previously filed the declarations of Todd Boyle and Rich Creegan in support of its Motion.

business known as Advanced Metering Data Systems, LLC ("AMDS"). Franklin was a founder, executive, and shareholder of AMDS. He resigned his position with Sensus to immediately join SSN as its Vice President of Sales, Southeast. (Franklin Dec. ¶ 20). SSN is a Delaware corporation headquartered in California and a direct competitor of Sensus in the advanced metering infrastructure ("AMI") industry.[2]

### A. Sensus' business and the AMI market.

The metering systems Sensus provides its customers include not only the individual meters located on the utility customers' property, but also the proprietary software to remotely monitor the meters and the communication networks necessary to make the system work. (Creegan Dec. ¶ 3). Sensus' network architecture, based on direct communications between the meter, a tower gateway base station, and the utility, is unique in the industry. This system is known as the FlexNet system.[3] (Creegan Dec. ¶ 6). Competitor systems, including the systems sold by SSN, are known as "mesh" systems. In a mesh system, meters talk indirectly through multiple neighboring meters forming a communications web or "mesh" instead of directly to a tower gateway base station. (Creegan Dec. ¶ 6). To communicate with the utility, data must be transferred through multiple meters. Mesh systems are volatile and can be cumbersome to manage due to the complexity of bouncing an individual meter's reading off one or more of its neighboring meters. Because of the distinction in the networks offered by Sensus and its competitors, Sensus has a unique competitive advantage over companies offering mesh systems. (Creegan Dec. ¶ 6). Franklin was critical to

---

[2] In the last five years, Sensus and SSN have directly competed against each other on many customer bids. Franklin was a key contributor to Sensus' wins against SSN. (Creegan Dec. ¶ 12). Sensus and SSN are actively competing against each other on a number of current deals, including ones that Franklin was involved in. (Creegan Dec. ¶ 14).

[3] The FlexNet system is described in detail in Rich Creegan's declaration at paragraphs 3-6.

developing Sensus' proprietary "FlexNet" technology and was a key contributor to the great majority of Sensus' FlexNet meter sales. (Creegan Dec. Ex. 1).

### B. Sensus' purchase of AMDS.

Pursuant to Sensus' asset purchase agreement with AMDS, Sensus paid over $150 million for the equity, assets, and goodwill of AMDS. (Boyle Dec. ¶ 6). With the purchase of AMDS, Sensus fundamentally changed the nature of its business. Sensus previously only sold the physical meters, but the technology and systems acquired in the AMDS asset purchase allowed it to develop fixed-network automated meter infrastructure solutions. (Boyle Dec. ¶ 6). Sensus purchased AMDS specifically to acquire this technology, and it is the AMDS technology that formed the basis of its current FlexNet technology. (Boyle Dec. ¶ 6).

### C. Franklin's Agreement.

At the time of the asset acquisition, Franklin was a founder, principal executive, and key contributor at ADMS, and he had intimate knowledge concerning AMDS' technology and systems. (Creegan Dec. ¶ 9). In connection with Sensus' acquisition of AMDS and his ancillary subsequent executive-level employment with Sensus, Franklin executed the Agreement with Sensus. (Boyle Dec. ¶ 7; Ex. A). Among other things, the Agreement contains reasonable restrictions that prohibit Franklin from working for a Competitive Business in the Market for two years, from soliciting Sensus' customers or employees for two years, and from disclosing Sensus' confidential business information. (Boyle Dec. Ex. A, ¶¶ 7(a), (b), (c), 9).

One of the critical factors involved in Sensus' purchase of AMDS was the ability of Sensus to retain select AMDS executives subject to non-competition restrictions. (Boyle Dec. ¶ 7). Indeed, Franklin was one of only four essential AMDS executives to whom Sensus offered employment contracts in conjunction with the asset sale. (Boyle Dec. ¶ 7). Franklin's execution

4

of the Agreement was so critical to Sensus' purchase of AMDS that others within AMDS apparently pressured him to sign the Agreement. (Franklin Dec. ¶ 6). Sensus understands and believes that the total equity payout to Franklin by AMDS alone as a result of Sensus' acquisition of his company was well in excess of one million dollars. (Boyle Dec. ¶ 7).

### D.  Franklin's Employment with Sensus and Subsequent Resignation.

Sensus initially employed Franklin as its Director of Business Development.  In that position, Franklin was directly involved in marketing, business proposals, contract pricing, and margins.  Franklin also assisted in the development of the FlexNet technology Sensus acquired from AMDS. (Boyle Dec. ¶ 9).

In 2010, Franklin transitioned into the position of Director of Sales, one of Sensus' top level sales positions.  Between 2010 and his resignation in 2015, Franklin held positions as a lead national sales employee for Sensus. (*See* Boyle ¶¶ 11-12). Franklin was the lead or key contributor to the sale of approximately 15.4 million Sensus meters which represent the great majority of FlexNet meters ever sold. (Creegan Dec. Ex. 1).  Because of Franklin's unique knowledge, he was also often involved in supporting sales opportunities outside his direct assignments, working with others on key accounts to develop sales strategies and technical solutions regarding the use and configuration of FlexNet technology. (Creegan Dec. ¶¶ 9,13,15).

On August 17, 2015, Franklin submitted notice of his resignation from Sensus, effective two weeks later. (Creegan Dec. ¶ 10; Ex. 1).

### E.  Franklin's Employment with SSN.

On or about August 19, 2015, Sensus learned that Franklin accepted a position with SSN, as Vice President of Sales, Southeast. (Franklin Dec. ¶ 20).  Currently, Sensus and SSN are

5

competing on numerous outstanding bids, including ones Franklin was directly involved in. (Creegan Dec. ¶ 14).

## STANDARD OF REVIEW

### I.     Motion to Dismiss for *Forum Non Conveniens.*

Under the doctrine of *forum non coveniens*, a federal court should normally consider both the private interests of the parties and public-interest considerations to decide whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. *Atlantic Marine Const. Co. v. U.S. Dist. Court for the Western Dist. of TX*, 134 S.Ct. 568, 581 (2013). However, the existence of a valid forum selection clause changes this calculus. *Id.* "'[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (*quoting Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)).

### II.     Motion for Temporary Restraining Order.

To obtain temporary injunctive relief, a party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that he public interest favors such relief." *Kos Pharms., Inc. v. Adrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

## ARGUMENT

### I.     <u>This Court Is the Proper Forum to Hear the Parties' Dispute.</u>

The parties agreed that all disputes arising out of the Agreement would be litigated in Delaware. Agreement Section 21 states in part:

> THE PARTIES TO THIS AGREEMENT HEREBY (1) AGREE UNDER ALL CIRCUMSTANCES ABSOLUTELY AND IRREVOCABLY TO INSTITUTE

6

> ANY LITIGATION, PROCEEDING OR OTHER LEGAL ACTION IN A
> COURT OF COMPETENT JURISDICTION LOCATED IN DELAWARE,
> WHETHER A STATE OR FEDERAL COURT; … (3) AGREE TO WAIVE TO
> THE FULL EXTENT PERMITTED BY LAW ANY OBJECTION THAT THEY
> MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH
> LITIGATION, PROCEEDING OR ACTION IN ANY SUCH COURT …

Franklin asks the Court to dismiss this action based on the doctrine of *forum non coveniens* and

allow Sensus to re-file in Georgia court.[4]  Because a valid forum selection clause controls, the

Court should deny Franklin's motion.

### A.  The forum selection clause is valid.

A forum selection clause is "prima facie valid and should be enforced unless enforcement

is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata*

*Off-Shore Co.*, 407 U.S. 1, 10 (1972).

> A forum selection clause is "unreasonable" where the defendant can make a "strong
> showing" *either* that the forum thus selected is "so gravely difficult and inconvenient
> that he will for all practical purposes be deprived of his day in court," *or* that the
> clause was procured through "fraud or overreaching."

*Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (*quoting Bremen*, 407 U.S. at

15, 18)).

There was no fraud, influence, or overweening bargaining power in the negotiation of the

Agreement.  Franklin was a founder and executive of AMDS and received many years of well-

paying employment by Sensus in exchange for signing the Agreement.  (*See* Agreement p. 1

(identifying AMDS as "a company founded by the Executive")).  Additionally, Franklin received

---

[4] Although not expressly stated in Franklin's Opening Brief, it appears he moves to have this case
re-filed in Georgia state court.  The procedure for transferring from one federal court to another is
governed by 28 U.S. C. § 1404(a), while the doctrine of *forum non conveniens* is relevant to the
transfer of a case from a federal court to a state court.  *Atlantic Marine*, 134 S.Ct. at 581.
Regardless the same standard applies to both motions to transfer under § 1404(a) and motions to
dismiss based on *forum non conveniens.  Id.*

over one million dollars as part of the Sensus' purchase of AMDS. (Boyle Dec. ¶ 7). Indeed, Franklin does not challenge the validity of the forum selection clause in his Opening Brief. Instead, he argues that Georgia is now a more convenient forum for him to litigate.

### B. The forum selection clause bars Franklin's motion to dismiss.

"Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interests of justice." *Atlantic Marine*, 134 S.Ct. at 581. However, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583.

The party defying the forum selection clause bears the burden of establishing why transferring away from the forum for which the parties bargained is warranted. *Id.* at 582. Moreover, a court should not consider arguments about the parties' private interests. *Id.* Parties to a forum selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* "'[W]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.'" *Id.* (quoting *The Bremen v. Zapata off-Shore Co.*, 407 U.S. 1, 17-18 (1972)). Consequently, a district court may only consider arguments about public-interests factors. *Id.*

Franklin argues that private factors, primarily the fact that he currently lives in Georgia, require the Court dismiss this action. In the face of a valid forum selection clause, these facts are irrelevant and may not be considered by the Court. *Id.* Moreover, Delaware is not so inconvenient a forum that it would deny Franklin his day in court if the case continued to be litigated in this

forum. *See Bremen*, 407 U.S. at 18 ("the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived his day in court.").

Franklin's public interest factors are equally unpersuasive.   Again ignoring the Agreement's binding forum selection clause and its effect on the court's analysis, Franklin cites *Bell Helicopter Textron , Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 411 (D. Del. 2002). (Franklin Brief pp. 14-15).  However, *Bell Helicopter* did not involve a forum selection clause, and its analysis is not applicable to this action.  Because public factors will rarely defeat a forum selection clause, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582

There are no unusual circumstances that would negate the parties' forum selection clause in this case. Franklin states that Georgia Superior Court has a less crowded docket than the District Court in Delaware, but offers no evidence in support of this conclusion.  He also argues that Georgia has an interest in the case because he lives there.  These issues are not unusual in cases involving choice of law and conflict of law analysis.  In such cases, one party often resides out of state.  Additionally, since Franklin filed the Motion to Dismiss, the Superior Court of Georgia entered an Order staying the Georgia Litigation and denying Franklin's Motion for Temporary Restraining Order.  The Georgia Court has deferred exercising jurisdiction over this dispute to this Court. In conjunction with the Supreme Court's guidance that public-interest factors should rarely overcome a valid forum selection clause, Franklin's arguments fail to show any unusual circumstances justifying dismissal for *forum non conveniens*.

9

## II.    The Court Should Deny Franklin's Motion to Stay.

In the alternative to his motion to dismiss, Franklin argues that this action should be stayed pending resolution of the Georgia Litigation. As stated above, the Superior Court of Fulton County, Georgia stayed the Georgia Litigation pending resolution of the matters before this Court. The Georgia Court has not ruled on any of the issues before this Court and will defer any further rulings in the Georgia Litigation until this matter is resolved. Franklin's arguments in support of staying this action are now moot, and the Court should deny his Motion to Stay.

## III.    The Court Should Temporarily Enjoin Franklin's Willful Misconduct.

Sensus initiated this action to prevent the irreparable harm and contractual breaches resulting from Franklin's employment at SSN. Franklin brazenly states that he will not comply with his contractual obligations and asserts that the Agreement is not enforceable against him because he lives in Georgia. Franklin was critical to the development of Sensus' proprietary technology systems and was a lead negotiator in Sensus' business deals nationwide. He must be immediately ordered to comply with the Agreement and enjoined from further harming Sensus.

### A. Sensus is likely to succeed on the merits of its claim.

Sensus asserts two breach of contract claims against Franklin for violating the Agreement by working for SSN. Franklin concedes that he is working for SSN in a substantially similar position to the sales position he held at Sensus.[5] Thus, his willful misconduct is admitted and not at issue. The question before the Court is whether to apply the law of Delaware as agreed by the parties in the Agreement, or to apply Georgia law as Franklin now argues. Delaware's conflict of

---

[5] Franklin is the SSN Vice President of Sales, Southeast. (Franklin Dec. ¶ 20). He held the position of Senior Sales Director for Sensus. (Boyle Dec. ¶ 12).

laws analysis clearly favors application of Delaware law to the Agreement, and the Agreement is enforceable under Delaware law.

### i. Delaware law applies to the Agreement.

The parties unambiguously chose Delaware law to govern the Agreement. "THIS AGREEMENT SHALL BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF DELAWARE." (Agreement § 20(d)). "[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract." *Coface Collections North Am., Inc. v. Newton*, 430 F. App'x 162, 166 (3d Cir. 2011) (*citing Abry Partners V, L.P. v. F&W Acquisitions LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006)). Delaware state and federal courts apply Restatement (Second) of Conflict of Laws, Section 187 as the framework for determining whether to give effect to a contract's a choice-of-law provision.[6] *Coface*, 430 F. App'x at 166. Under Section 187, a choice-of-law clause will be enforced <u>unless</u> either:

(a) The chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) Application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187. Franklin's Opening Brief misstates the order in which the Court should consider these factors and glosses over important facts to summarily conclude that Georgia law should be applied to this dispute.[7] No other state has a materially greater

---

[6] As a federal court exercising diversity jurisdiction, the district court must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).
[7] Franklin argues Georgia law should apply if (1) its law would apply absent a choice-of law provision; (2) application of Delaware law would be contrary to a fundamental policy of Georgia;

interest in the determination of these issues than Delaware, and the Court should apply Delaware law pursuant to the parties' Agreement.

        1.  <u>Delaware has a substantial relationship to the parties and the dispute.</u>

Franklin's argument that Delaware has "no interest" in this dispute is simply wrong. (*See* Franklin Brief p. 7). Delaware has a substantial interest because it is where Sensus is incorporated and is the parties' negotiated choice of law. *See Coface*, 430 F. App'x at 167. "That physical contacts exist elsewhere 'does not render less important the legally-designated home of the entity for purposes of (1) its existence as an entity, and most critically, (2) its relations among itself, its governing fiduciaries, and its investors." *Id.* (*quoting Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 883 (Del. Ch. 2009).

Moreover, the idea that a party's incorporation in the state of Delaware establishes a significant connection to the state is embodied in 6 *Del*. C. § 2708. This section states in relevant part:

> The parties to a contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflicts of laws, or the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties if the parties, either as provided by law or in the manner specified in such writing are (i) subject to the jurisdiction of the courts of, or arbitration in, Delaware and (ii) may be served with legal process. *The foregoing shall conclusively be presumed to be significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State.*

6 *Del*. C. § 2708(a) (emphasis added).

---

and (3) Georgia has a materially greater interest in the transaction than Delaware. (Franklin Brief pp. 5-6). This statement of the test and analytical framework is contrary to the plain language of Restatement Section 187 and the case law applying it. *See Coface*, 430 F. App'x at 166-168 (applying the Section 187 test and noting that the threshold question is whether another state has a materially great interest in determining an issue and, if not, the court may stop its analysis and apply the agreement's choice of law provision).

Where, as here, a Delaware corporation enters into a contract choosing Delaware law as governing, it is conclusively presumed that a significant, material, and reasonable relationship exists with the state. This presumption is sufficient to satisfy the first prong of the test stated in Restatement (Second) of Conflict of Laws, § 187. *See Coface*, 430 F. App'x at 167.

2. <u>Georgia does not have a materially greater interest than Delaware in the parties' dispute.</u>

To overcome the parties' chosen law, another state must have a "materially greater" interest – *i.e.* more than a significant, or even substantial, interest. Here, no state has an interest materially greater than Delaware in the outcome of the dispute. Delaware law should be applied.

In *Coface*, Defendant entered into a non-compete agreement as part of an asset purchase agreement with Plaintiff. The parties agreed that the agreement was subject to Delaware law. Defendant argued that Louisiana law applied and that the post-employment restrictions were not enforceable under Louisiana law. *Coface*, 430 F. App'x at 167-68. Defendant was a citizen of Louisiana, signed the Agreement in Louisiana, and his competing business was headquartered there. *Id.* at 168. Although these contacts showed Louisiana had a substantial interest in the dispute, "these geographical contacts [did] not support the conclusion that Louisiana has a 'materially greater interest' in determining the effect of the covenant not to compete." *Id.* Because Coface was a national company and Delaware has a substantial interest in enforcing a contract clause that explicitly designated Delaware law to govern, the Third Circuit affirmed this Court's application of Delaware law. *Id.*

Here, as in *Coface*, Sensus is a national business with operations throughout the United States and Canada. Sensus is headquartered in North Carolina. The Agreement was signed in conjunction with Sensus' purchase of the assets of a Louisiana based company. Franklin was the, or a, lead negotiator for Sensus in deals based in Pennsylvania, Tennessee, Maryland, Kentucky,

13

Washington, Oregon, Georgia, New Jersey, and New York. He is now working for SSN which is incorporated in Delaware and headquartered in California. Although Franklin lives in Georgia and allegedly signed the Agreement in Georgia, these are the only ties the parties have to Georgia. These contacts are significantly fewer than those deemed insufficient to create a materially greater interest than Delaware in *Coface*. *See id.*

Franklin confuses the conflict of laws test when he argues that Georgia has a materially greater interest than Delaware because the agreement allegedly violates Georgia public policy. (Franklin Brief p. 7). The issues of "materially greater interest" and "violates public policy" are two separate questions under Restatement (Second) of Conflict of Laws, § 187. The threshold question under Section 187 is whether a state other than the one designated in a choice-of-law clause has a materially greater interest in determining the particular issue. If it does not, the Court need not determine whether Delaware law contradicts a fundamental public policy of another state. *See Coface*, 430 F. App'x at 167 n.8. Other than inadequate geographical contacts and the purported public policy violations, Franklin offers no evidence supporting his claim that Georgia has a materially greater interest in this dispute than Delaware. As in *Coface*, Franklin's purported evidence in this regard is insufficient to show a materially greater interest.

Moreover, Franklin ignores Section 187's requirement that in addition to having a materially greater interest in the dispute than Delaware, Georgia **must** "be the state of applicable law in the absence of an effective choice of law by the parties" as determined by Restatement Section 188. In the absence of an effective choice of law provision by the parties, the court should consider (a) the place of contracting, (b) the place of negotiating the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation, and place business of the parties. Restatement (Second) of Conflict of

14

Laws, § 188. Franklin presumes Georgia law would apply in the absence of the parties' choice of law agreement. His argument ignores the fact that Sensus is based in North Carolina, that the Agreement was negotiated in North Carolina and Louisiana, that the Agreement was performed on a national scale and the subject matter of the contract encompassed a national subject matter. North Carolina and Delaware have an equal, if not greater, claim to being the governing law of the agreement absent the choice of law provision.

Based on Sensus' Delaware citizenship, its national operations, Franklin's national work for Sensus, Silver Spring's Delaware citizenship, and Delaware's public policy of enforcing its citizen's contracts choosing Delaware law, it cannot reasonably be argued that Georgia has a **materially greater** interest in the outcome of this dispute than Delaware. *See Abry Partners*, 891 A.2d at 1049-50 ("[Delaware] citizens ought to be able to use our law as a common language for their commercial relationships, particularly when those relationships involve commerce and do not center in any material manner on the geography of a particular party's operational headquarters."). This Court should find that Delaware law applies to the Agreement as agreed to by the parties.

3. Delaware law is not contrary to a fundamental policy of Georgia law.

However, even if Georgia had a materially greater interest in the outcome of this dispute than Delaware, the law of Delaware still applies because its application is not contrary to a fundamental policy in Georgia. There is a high threshold for establishing a "fundamental policy" that would invalidate a choice of law provision. *Coface*, 430 F. App'x at 168. Indeed, "[t]o enter into a contract under Delaware law and then tell the other contracting party that the contract is unenforceable due to the public policy of another state is neither a position that tugs at the heartstrings of equity nor is it commercially reasonable." *Abry Partners*, 891 A.2d at 1050.

15

The restrictions in the Agreement, including the non-competition, non-solicitation and non-disclosure provisions are reasonable, and therefore are valid and enforceable under applicable Georgia law. In general, "the reasonableness of any covenant not to compete ancillary to the sale of a business must be measured on the basis of whether the restricted activity protects the purchaser's legitimate business interests, *i.e.*, the value of the business and its goodwill." *Drumheller v. Drumheller Bag & Supply, Inc.*, 204 Ga. App. 623, 627-28, 420 S.E.2d 331, 334 (1992). Indeed, the restrictions in the Agreement are narrowly drawn and essential for the protection of Sensus' legitimate business interests. Each of these restrictions is enforceable under Georgia law. *See e.g. Martinez v. DaVita, Inc.*, 266 Ga. App. 723, 728, 598 S.E.2d 334, 338 (2004) (upholding two-year restriction against seller-employee and noting that covenants not to compete made with the sale of a business may be unlimited in time as long as the seller remains in business); *Am. Control Sys., Inc. v. Boyce*, 303 Ga. App. 664, 670-71, 694 S.E.2d 141, 146-47 (2010) (the Court upheld a non-competition restriction nearly identical to the restriction at issue in this case); *Hicks v. Doors By Mike*, 260 Ga. App. 407, 411, 579 S.E.2d 833, 836 (2003) (non-competition restriction was reasonable and enforceable even though it prohibited former employee/seller from working in any capacity in the parties' business). Enforcing agreements such as the one at issue in this case does not violate a fundamental policy of Georgia law, and the court should enter a temporary restraining order. *See Coface*, 430 F. App'x at 168 (Louisiana's application of other states laws through choice of law provisions to enforce such agreements showed the absence of any "fundamental policy" sufficient to overcome the parties' choice of Delaware law).

### ii. The Agreement is enforceable under Delaware law.

Under Delaware law, "[t]o be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and

16

temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, *2 (Del. Ch.). The parties agree that the Agreement's post-employment restrictions are enforceable under Delaware law. "[I]t appears that a Delaware court applying Delaware law would enforce the covenants in this case…" (Franklin Brief. p. 7). The Agreement contains reasonable restrictions necessary to enforce Sensus' legitimate business interests and should be enforced by this Court.

### iii. The Agreement has not "lapsed."

Citing no legal authority, Franklin contends that the Agreement has lapsed because Franklin was promoted above the position Sensus initially hired him for when the Agreement was signed. (*See* Franklin Brief p. 8). The changes to Franklin's job duties did not affect the Agreement's restrictive covenants. Delaware law recognizes that parties may modify written agreements, even if the modifications are not formally written. *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 567-568 (D. Del. 1993) (modification is possible with all the requisites of a valid and enforceable agreement that leaves no doubt of the parties' intentions). Even after modification, the new contract does not destroy the old, unchanged terms. *Id.*

Franklin argues that because of a change in his job duties and pay structure that the Agreement has "lapsed" and is not binding on him. He does not assert that upon promotion the parties agreed to release him from his post-employment restrictions. Under Delaware law, a change in his job duties only modified those specific terms of the Agreement. The unchanged terms, including the restrictive covenants, remained in place and are binding on him today.

### B. Sensus will suffer irreparable harm if Franklin is not enjoined.

Sensus is incurring and will continue to incur irreparable harm if the Court does not order Franklin to comply with his contract obligations. Understanding Franklin's important job duties

17

at Sensus and his unfettered access to its confidential information, the parties stipulated that specific performance through injunctive relief is an appropriate remedy in the event of a breach of the Agreement. (Agreement § 7(e)). "The public policy of [Delaware] permits parties to limit the importance of such counterfactual inquiries by agreeing that breaches of their contracts will create irreparable harm and should be remedied by injunctive relief." *Hough Associates, Inc. v. Hill*, 2007 WL 148751, *18 (Del. Ch.); *see also Simplexity, LLC v. Zeinfeld*, 2013 WL 1457726, *14 (Del. Ch.) (a contract term stating that a threatened breach would be irreparable at law "normally suffices to establish irreparable harm for the purposes of establishing the right to a preliminary injunction in this Court."). Thus, the parties contracted that a restraining order is necessary to prevent irreparable harm in the event of a breach of the Agreement and the Court should enforce this contract term.

Even in the absence of stipulated irreparable harm, the evidence demonstrates Sensus will suffer immediate and irreparable harm from Franklin's breaches. In his resignation letter, Franklin outlined his importance to Sensus' proprietary technology and the growth of the company. He states that he was critical to building Sensus' defining technology – FlexNet. (Creegan Dec. Ex. 1). Moreover, he was the lead or key contributor in the sale of approximately 15.4 million meters which "represent the great majority of FlexNet [meters] ever sold." (Creegan Dec. Ex. 1). Indeed, Franklin was directly involved in three of the largest sales contracts in Sensus' history. (Creegan Dec. ¶ 13 ). The largest these sales involved Southern Company, an Atlanta-based company which provides utility services to customers in Georgia, Alabama, Mississippi, and Florida. As SSN's Vice President of Sales, Southeast, Franklin will be competing with Sensus for Southern Company's business. Moreover, at the time of his resignation, Franklin was actively working on

bids for which Sensus is competing against SSN and assisting customers on developing future requests for proposals. (Creegan Dec. ¶¶ 14-17).

Sensus and its competitors provide services to large scale utilities. Each sales contract may be worth hundreds of millions of dollars. Because of the complexity of these contracts and the services provided, the contracts allow the utilities many opportunities to cancel the agreements. (*See* Creegan Dec. ¶ 16). Franklin has detailed knowledge of Sensus' pricing and cost structure, its customers' needs, Sensus' technological advances and limitations, and specific contract details. He is perfectly positioned at SSN to leverage this information against Sensus. Moreover, Franklin is clearly disgruntled with his employment at Sensus and motivated to cause it actual harm.[8]  The loss of one or more of the contracts he was involved in would represent significant blows to Sensus' business, losses that would be irreparable given the monetary amounts at issue in these contracts and the length of agreements.

### C.  The balance of harms favors entering a temporary injunction.

The harm to Sensus if an injunction is not entered is clear and difficult to mitigate: Sensus faces the prospect of losing multiple existing and prospective contracts worth hundreds of millions of dollars with no real chance of recovering a future judgment from Franklin for this amount. On the other hand, Franklin argues that he will not be able to earn a salary if he is ordered to comply with his contract obligations. (Franklin Brief pp. 17-18). "To lose one's salary is a blow to any working person, but it is not ordinarily a blow that is legally irreparable." *Burge v. City of Dover*, 1987 WL 12311, *10 (Del. Ch.) (*citing Sampson v. Murray*, 415 U.S. 61, 89-92 (1974)). *See also*,

---

[8] Franklin states in his declaration, "I felt I had no choice but to resign my employment with Sensus due to a series of developments I considered degrading, humiliating, and entirely unjustified." (Franklin Dec. ¶ 13). He made similar statements in his resignation letter. (Creegan Dec. Ex. 1).

*Burton v. PFPC Worldwide, Inc.*, 2003 WL 22682327, \*4 (Del. Ch.) (argument that employee could not pay health insurance premiums is not sufficient irreparable harm deny enforcement of restrictive covenants). A party must show "more than simply the loss of money and what it can buy, but will suffer further specific consequences that the law would regard as irreparable." *Id.*

Here, the undeniable evidence is that Franklin received more than a million dollars as a result of Sensus' purchase of AMDS and was directly involved in the three largest deals in Sensus' history. (Boyle Dec. ¶ 7; Creegan Dec. ¶ 13). Under the terms of the Agreement, he is free to work outside the AMI industry in positions that do not violate his contract obligations. Instead, he chose to resign his successful position at Sensus and immediately join its direct competitor in a similar role. The possibility that Franklin may not be able to work for a few months as a result of this intentional misconduct does not outweigh the substantial threat to Sensus of his continued employment for SSN. Moreover, a strong public interest exists in enforcing non-compete agreements and promoting lawful competition. A temporary restraining order is needed to prevent Franklin from irreparably harming Sensus.

**CONCLUSION**

Based on the foregoing, Sensus respectfully asks the Court to deny Franklin's motion to dismiss and enter a temporary restraining order that requires him to comply with his obligations in the Agreement.

PROCTOR HEYMAN ENERIO LLP

/s/ Samuel T. Hirzel, II
Samuel T. Hirzel (# 4415)
Aaron M. Nelson (# 5941)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
Dated: September 25, 2015    *Attorneys for Plaintiffs*

20
