## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SENSUS USA, INC.; SENSUS WORLDWIDE )
LIMITED; and SENSUS WORLDWIDE )
HOLDINGS LIMITED, )
            )
      Plaintiffs, )
            )
v. )      C.A. No. 15-742 UNA
            )
BENJAMIN P. FRANKLIN, JR., )
            )
      Defendant. )

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

PROCTOR HEYMAN ENERIO LLP
Samuel T. Hirzel (# 4415)
Aron M. Nelson (# 5941)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300

-and-

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Kevin S. Joyner (*pro hac*)
N.C. Bar No. 25605
Phillip J. Strach (*pro hac*)
N.C. Bar No. 29456
J. Allen Thomas (*pro hac*)
N.C. Bar No. 40119
4208 Six Forks Road, Suite 1100
Raleigh, N.C. 27609
Telephone:  (919) 787-9700
Facsimile:  (919) 783-9412
Kevin.Joyner@ogletreedeakins.com
Phil.Strach@ogletreedeakins.com
Allen.Thomas@ogletreedeakins.com

*Attorneys for Plaintiffs*

Dated:  January 8, 2016

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 2

STATEMENT OF FACTS ............................................................................................................... 3

    A.       Sensus' business and the AMI market. .................................................. 4

    B.       Sensus' purchase of AMDS ................................................................... 5

    C.       Franklin's Agreement .............................................................................. 5

    D.       Franklin's Employment with Sensus and Subsequent Resignation ......... 6

    E.       Franklin's Employment with SSN ......................................................... 6

STANDARD OF REVIEW ............................................................................................................. 7

ARGUMENT ................................................................................................................................... 7

    I.       Sensus Is Likely to Succeed on the Merits of Its Claim. .......................... 7

      A.       Delaware law applies to the Agreement. ............................................... 7

        1.      Delaware has a substantial relationship to the parties and the dispute. .................... 8

        2.      Georgia does not have a materially greater interest than Delaware in the parties' dispute. ........................................................................ 9

        3.      The Agreement is enforceable under Delaware law. .............................. 11

        4.      The Agreement has not "lapsed." ......................................................... 14

    II.      Sensus will suffer irreparable harm if Franklin is not enjoined. ............. 14

    III.      The balance of harms favors entering a preliminary injunction. ............. 17

CONCLUSION ............................................................................................................................... 18

CERTIFICATE OF SERVICE ...................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abry Partners V, L.P. v. F&W Acquisitions LLC,*
   891 A.2d 1032 (Del. Ch. 2006).................................................................11

*Am. Homepatient, Inc. v. Collier,*
   2006 WL 1134170 (Del. Ch. April 19, 2006).........................................11

*Burge v. City of Dover,*
   1987 WL 12311 (Del. Ch. June 8, 1987)..................................................17

*Burton v. PFPC Worldwide, Inc.,*
   2003 WL 22682327 (Del. Ch. Aug. 4, 2003) ...........................................17

*Coface Collections North Am., Inc. v. Newton,*
   430 F. App'x 162 (3d Cir. 2011) ......................................................8, 9, 10

*Enzo Life Sciences, Inc. v. Adipogen Corp., et al.,*
   82 F. Supp. 3d 568 (D. Del. 2015).............................................................17

*Express Shuttle, Inc. v. Older,*
   2002 WL 31458243 (Del. Ch. Oct. 23, 2002) ..........................................12

*Faw, Casson & Co. v. Cranston,*
   375 A.2d 463 (Del. Ch. 1977)....................................................................12

*Haft v. Dart Group Corp.,*
   841 F. Supp. 549 (D. Del. 1993)................................................................14

*Hough Associates, Inc. v. Hill,*
   2007 WL 148751 (Del. Ch. Jan. 17, 2007)...............................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
   313 U.S. 487 (1941)......................................................................................8

*Kos Pharms., Inc. v. Adrx Corp.,*
   369 F.3d 700 (3d Cir. 2004).........................................................................7

*O'Leary v. Telecom Res. Servs., LLC,*
   2011 WL 379300 (Del. Super. Jan. 14, 2011) .........................................12

*Research and Trading Corp. v. Pfuhl, Jr.,*
   1992 WL345465, *12 (Del. Ch. Nov. 18, 1992) ......................................12

ii

*Simplexity, LLC v. Zeinfeld,*
    2013 WL 1457726 (Del. Ch. Apr. 5, 2013) .........................................................................14, 15

*Singh v. Batta Envtl. Assocs., Inc.,*
    2003 WL 21309115 (Del. Ch. May 21, 2003) ..........................................................................13

*Vencor, Inc. v. Webb,*
    33 F.3d 840 (7th Cir. 1994) ......................................................................................................16

**Other Authorities**

Creegan Dec. Ex. 1 .......................................................................................................... *passim*

Restatement (Second) of Conflict of Laws, Section 187 ......................................................8, 9, 10

Restatement (Second) of Conflict of Laws, § 188 ..............................................................8, 10, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

On October 2, 2015, this Court heard oral argument from counsel for the parties related to the Motion for Temporary Restraining Order ("TRO") brought on behalf of Plaintiffs Sensus USA, Inc., Sensus Worldwide Limited, and Sensus Worldwide Holdings Limited (collectively "Sensus") against Defendant Benjamin P. Franklin, Jr. ("Franklin"), as well as Franklin's Motion to Dismiss Plaintiffs' Complaint. The Court, after fully considering the legal briefs of the parties as well as the oral argument of counsel, granted Sensus' Motion for TRO and denied Defendant's Motion to Dismiss. The Court also set a hearing date of February 19, 2016, for the Court to hear Plaintiffs' Motion for Preliminary Injunction.

The same legal issues which were before the Court when it granted Sensus' Motion for TRO and denied Defendant's Motion to Dismiss on October 2, 2015, are presently before the Court. Namely, whether Franklin, the former Director of Business Development and Director of Sales for Sensus should be enjoined from violating the Employment and Non-Interference Agreement ("Agreement") he entered into with Sensus where Franklin's Agreement contains a valid forum selection clause and choice of law provision designating Delaware as the appropriate forum for this matter and Delaware law to govern the dispute. Franklin previously asked the Court to ignore these binding terms and allow a Georgia court to determine these issues under Georgia law. However, this Court declined to do so and found, for the reasons stated in open court on October 2, 2015, that Delaware courts were the proper forum and Delaware law applies to the Agreement. *See* Transcript (D.I. 21, pp. 38-47). Since no dispute existed as to whether the Agreement was enforceable under Delaware law – Franklin conceded that it was enforceable under Delaware law – the Court granted Sensus' Motion for TRO.

1

As demonstrated by his previous actions, Franklin has no intention of honoring the Agreement absent a Court Order restraining him from violating its terms. Accordingly, a preliminary injunction order is needed to restrain Franklin from further breaching his Agreement until final resolution of this case.

## NATURE AND STAGE OF THE PROCEEDINGS

Because of the irreparable financial harm and damage to Sensus' goodwill and other legitimate business interests that will result if Franklin is permitted to violate the restrictive covenant terms in the Agreement and use Sensus' confidential and proprietary business information for the benefit of his new employer, on August 24, 2015, Sensus filed its Complaint in this action and accompanying Motion for Temporary Restraining Order against Franklin, seeking to enforce the Agreement in the Court of Chancery of the State of Delaware. On August 26, 2015, Franklin removed this action to the United States District Court for the District of Delaware.

Two days later, on August 28, 2015, Franklin and Silver Springs Network, Inc. ("SSN"), Franklin's new employer, filed a civil suit against Sensus in the Superior Court of Fulton County, Georgia ("Georgia Litigation"). In the Georgia Litigation, Franklin and SSN sought a declaratory judgment and injunctive relief with respect to the covenants contained in Franklin's Agreement. In particular, they asked the Georgia state court to assert jurisdiction over the dispute and rule that the Agreement violated Georgia law. After a hearing on September 9, 2015 and consideration of the parties' legal briefs, the Georgia court entered an Order denying Franklin and SSN's Motion for Temporary Restraining Order and staying the Georgia Litigation pending resolution of this matter. (*See* D.I. 14.)[1]

---

[1]   On October 2, 2015, Franklin and Silver Springs Networks, Inc. filed a Motion to Lift Stay and for the Court to Rule on an Expedited Basis on That and Plaintiffs' Motion for Declaratory

2

On September 14, 2015, Franklin filed a Motion to Dismiss or, in the alternative, to Stay Proceedings. (D.I. 7). The supporting documents included a brief in support of Franklin's Motion and in opposition to Sensus' Motion for Temporary Restraining Order. Pursuant to the Court's Order on September 18, 2015, (D.I. 15), Sensus filed its brief in response to Franklin's Opening Brief and in further support of its Motion for Temporary Restraining Order on September 25, 2015 (D.I. 16).

As set forth above, this Court conducted a hearing on October 2, 2015, on Sensus' Motion for TRO and Franklin's Motion to Dismiss. After due consideration of the arguments presented by counsel for the parties, the Court granted Plaintiff's Motion for TRO (D.I. 20) and denied Defendant's Motion to Dismiss (D.I. 19).

### STATEMENT OF FACTS

Sensus is a Delaware corporation headquartered in North Carolina. It manufactures advanced metering systems and automatic metering infrastructure for water, gas, and electric utilities. (Boyle Dec. ¶ 5).[2] Sensus is a national company whose customers are generally large public utilities offering exclusive utility service for a state or region.

Franklin was a Senior Director of Sales at Sensus until his resignation on August 17, 2015. Franklin joined Sensus in 2006 as part of Sensus' purchase of the assets of a Louisiana based business known as Advanced Metering Data Systems, LLC ("AMDS"). Franklin was an executive and shareholder of AMDS. He resigned his position with Sensus to immediately join SSN as its Vice President of Sales, Southeast. (Franklin Dec. ¶ 20). SSN is a Delaware corporation

---

Judgment in the Georgia court. On October 26, 2015, the Georgia Court entered an Order denying Plaintiffs' Motion to Lift Stay and For Declaratory Judgment, and staying the case pending final resolution of the instant case.

[2]     Sensus previously filed the declarations of Todd Boyle and Rich Creegan in support of its Motion for TRO.

headquartered in California and a direct competitor of Sensus in the advanced metering infrastructure ("AMI") industry.[3]

## A.   Sensus' business and the AMI market.

The metering systems Sensus provides its customers include not only the individual meters located on the utility customers' property, but also the proprietary software to remotely monitor the meters and the communication networks necessary to make the system work. (Creegan Dec. ¶ 3). Sensus' network architecture, based on direct communications between the meter, a tower gateway base station, and the utility, is unique in the industry. This system is known as the FlexNet system.[4] (Creegan Dec. ¶ 6). Competitor systems, including the systems sold by SSN, are known as "mesh" systems. In a mesh system, meters talk indirectly through multiple neighboring meters forming a communications web or "mesh" instead of directly to a tower gateway base station. (Creegan Dec. ¶ 6). To communicate with the utility, data must be transferred through multiple meters. Mesh systems are volatile and can be cumbersome to manage due to the complexity of bouncing an individual meter's reading off one or more of its neighboring meters. Because of the distinction in the networks offered by Sensus and its competitors, Sensus has a unique competitive advantage over companies offering mesh systems. (Creegan Dec. ¶ 6). Franklin was critical to developing Sensus' proprietary "FlexNet" technology and was a key contributor to the great majority of Sensus' FlexNet meter sales. (Creegan Dec. Ex. 1).

---

[3]      In the last five years, Sensus and SSN have directly competed against each other on many customer bids. Franklin was a key contributor to Sensus' wins against SSN. (Creegan Dec. ¶ 12). Sensus and SSN are actively competing against each other on a number of current deals, including ones that Franklin was involved in. (Creegan Dec. ¶ 14).

[4]      The FlexNet system is described in detail in Rich Creegan's declaration at paragraphs 3-6.

**B.   Sensus' purchase of AMDS**

Pursuant to Sensus' asset purchase agreement with AMDS, Sensus paid over $150 million for the equity, assets, and goodwill of AMDS. (Boyle Dec. ¶ 6). With the purchase of AMDS, Sensus fundamentally changed the nature of its business. Sensus previously only sold the physical meters, but the technology and systems acquired in the AMDS asset purchase allowed it to develop fixed-network automated meter infrastructure solutions. (Boyle Dec. ¶ 6). Sensus purchased AMDS specifically to acquire this technology, and it is the AMDS technology that formed the basis of its current FlexNet technology. (Boyle Dec. ¶ 6).

**C.   Franklin's Agreement**

At the time of the asset acquisition, Franklin was a principal executive and key contributor at ADMS, and he had intimate knowledge concerning AMDS' technology and systems. (Creegan Dec. ¶ 9). In connection with Sensus' acquisition of AMDS and his ancillary subsequent executive-level employment with Sensus, Franklin executed the Agreement with Sensus. (Boyle Dec. ¶ 7; Ex. A). Among other things, the Agreement contains reasonable restrictions that prohibit Franklin from working for a Competitive Business in the Market for two years, from soliciting Sensus' customers or employees for two years, and from disclosing Sensus' confidential business information. (Boyle Dec. Ex. A, ¶¶ 7(a), (b), (c); 9).

One of the critical factors involved in Sensus' purchase of AMDS was the ability of Sensus to retain select AMDS executives subject to non-competition restrictions. (Boyle Dec. ¶ 7). Indeed, Franklin was one of only four essential AMDS executives to whom Sensus offered employment contracts in conjunction with the asset sale. (Boyle Dec. ¶ 7). Franklin's execution of the Agreement was so critical to Sensus' purchase of AMDS that others within AMDS apparently pressured him to sign the Agreement. (Franklin Dec. ¶ 6). Sensus understands and

believes that the total equity payout to Franklin by AMDS alone as a result of Sensus' acquisition of his company was well in excess of one million dollars. (Boyle Dec. ¶ 7).

### D.     Franklin's Employment with Sensus and Subsequent Resignation

Sensus initially employed Franklin as its Director of Business Development.  In that position, Franklin was directly involved in marketing, business proposals, contract pricing, and margins.  Franklin also assisted in the development of the FlexNet technology Sensus acquired from AMDS. (Boyle Dec. ¶ 9).

In 2010, Franklin transitioned into the position of Director of Sales, one of Sensus' top level sales positions.  Between 2010 and his resignation in 2015, Franklin held positions as a lead national sales employee for Sensus. (*See* Boyle ¶¶ 11-12). Franklin was the lead or key contributor to the sale of approximately 15.4 million Sensus meters which represent the great majority of FlexNet meters ever sold. (Creegan Dec. Ex. 1).  Because of Franklin's unique knowledge, he was also often involved in supporting sales opportunities outside his direct assignments, working with others on key accounts to develop sales strategies and technical solutions regarding the use and configuration of FlexNet technology. (Creegan Dec. ¶¶ 9, 13, 15).

On August 17, 2015, Franklin submitted notice of his resignation from Sensus, effective two weeks later. (Creegan Dec. ¶ 10; Ex. 1).

### E.     Franklin's Employment with SSN

On or about August 19, 2015, Sensus learned that Franklin accepted a position with SSN, as Vice President of Sales, Southeast.  (Franklin Dec. ¶ 20).  Currently, Sensus and SSN are competing on numerous outstanding bids, including ones Franklin was directly involved in. (Creegan Dec. ¶ 14).  Upon information and belief, following this Court's granting of the TRO and the Georgia courts denial of Franklin and SSN's Motion to Lift Stay, Franklin's employment with SSN ended in or around November 2015.

## STANDARD OF REVIEW

To obtain a motion for preliminary injunction, a party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Adrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

## ARGUMENT

### I.    Sensus Is Likely to Succeed on the Merits of Its Claim.

Sensus asserts two breach of contract claims against Franklin for violating the Agreement by working for SSN. Franklin concedes that he worked for SSN in a substantially similar position to the sales position he held at Sensus.[5] Thus, his willful misconduct is admitted and not at issue. The question before the Court now – as it was when the Court entered its Order granting Sensus' Motion for TRO on October 2, 2015 – is whether to apply the law of Delaware as agreed by the parties in the Agreement, or to apply Georgia law as Franklin now argues. As this Court held on October 2, 2015, Delaware law applies to this dispute, and the Agreement is enforceable under Delaware law.

### A.    Delaware law applies to the Agreement.

The parties unambiguously chose Delaware law to govern the Agreement. "THIS AGREEMENT SHALL BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF DELAWARE." (Agreement § 20(d)). "[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract." *Coface Collections North*

---

[5]    Franklin was the SSN Vice President of Sales, Southeast. (Franklin Dec. ¶ 20). He held the position of Senior Sales Director for Sensus. (Boyle Dec. ¶ 12).

7

*Am., Inc. v. Newton*, 430 F. App'x 162, 166 (3d Cir. 2011) (Unpublished Opinion) (*citing Abry Partners V, L.P. v. F&W Acquisitions LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006)). Delaware state and federal courts apply Restatement (Second) of Conflict of Laws, Section 187 as the framework for determining whether to give effect to a contract's a choice-of-law provision.[6] *Coface*, 430 F. App'x at 166. Under Section 187, a choice-of-law clause will be enforced <u>unless</u> either:

   (a) The chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

   (b) Application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187. No other state has a materially greater interest in the determination of these issues than Delaware, and the Court should apply Delaware law pursuant to the parties' Agreement as it did when it previously entered its Order granting Sensus' Motion for TRO.

      1.    <u>Delaware has a substantial relationship to the parties and the dispute.</u>

Delaware has a substantial interest because it is where Sensus is incorporated and is the parties' negotiated choice of law. *See Coface*, 430 F. App'x at 167; *see also* Tr. P. 41. "That physical contacts exist elsewhere does not render less important the legally-designated home of the entity for purposes of (1) its existence as an entity, and most critically, (2) its relations among itself, its governing fiduciaries, and its investors." *Id.* (*quoting Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 883 (Del. Ch. 2009).

---

[6]     As a federal court exercising diversity jurisdiction, the district court must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).

Moreover, the idea that a party's incorporation in the state of Delaware establishes a significant connection to the state is embodied in 6 *Del.* C. § 2708. This section states in relevant part:

> The parties to a contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflicts of laws, or the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties if the parties, either as provided by law or in the manner specified in such writing are (i) subject to the jurisdiction of the courts of, or arbitration in, Delaware and (ii) may be served with legal process. *The foregoing shall conclusively be presumed to be significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State.*

6 *Del.* C. § 2708(a) (emphasis added).

Where, as here, a Delaware corporation enters into a contract choosing Delaware law as governing, it is conclusively presumed that a significant, material, and reasonable relationship exists with the state. This presumption is sufficient to satisfy the first prong of the test stated in Restatement (Second) of Conflict of Laws, § 187. *See Coface*, 430 F. App'x at 167.

2.   Georgia does not have a materially greater interest than Delaware in the parties' dispute.

The threshold question under Section 187 is whether a state other than the one designated in a choice-of-law clause has a materially greater interest in determining the particular issue – i.e. more than a significant, or even substantial, interest. If it does not, the Court need not determine whether Delaware law contradicts a fundamental public policy of another state. *See Coface*, 430 F. App'x at 167 n.8. Here, no state has an interest materially greater than Delaware in the outcome of the dispute. Delaware law should be applied.

In *Coface*, Defendant entered into a non-compete agreement as part of an asset purchase agreement with Plaintiff. The parties agreed that the agreement was subject to Delaware law. Defendant argued that Louisiana law applied and that the post-employment restrictions were not

enforceable under Louisiana law. *Coface*, 430 F. App'x at 167-68. Defendant was a citizen of Louisiana, signed the Agreement in Louisiana, and his competing business was headquartered there. *Id.* at 168. Although these contacts showed Louisiana had a substantial interest in the dispute, "these geographical contacts [did] not support the conclusion that Louisiana has a 'materially greater interest' in determining the effect of the covenant not to compete." *Id.* Because Coface was a national company and Delaware has a substantial interest in enforcing a contract clause that explicitly designated Delaware law to govern, the Third Circuit affirmed this Court's application of Delaware law. *Id.*

Here, as in *Coface*, Sensus is a national business with operations throughout the United States and Canada. Sensus is headquartered in North Carolina. The Agreement was signed in conjunction with Sensus' purchase of the assets of a Louisiana based company. Franklin was the, or a, lead negotiator for Sensus in deals based in Pennsylvania, Tennessee, Maryland, Kentucky, Washington, Oregon, Georgia, New Jersey, and New York. Although Franklin lives in Georgia and allegedly signed the Agreement in Georgia, these are the <u>only</u> ties the parties have to Georgia. These contacts are significantly fewer than those deemed insufficient to create a materially greater interest than Delaware in *Coface*. *See id.*

Moreover, under Section 187, in addition to having a materially greater interest in the dispute than Delaware, Georgia **must** "be the state of applicable law in the absence of an effective choice of law by the parties" as determined by Restatement Section 188. In the absence of an effective choice of law provision by the parties, the court should consider (a) the place of contracting, (b) the place of negotiating the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation, and place business of the parties. Restatement (Second) of Conflict of Laws, § 188. Sensus is based

in North Carolina, the Agreement was negotiated in North Carolina and Louisiana, the Agreement was performed on a national scale, and the subject matter of the contract encompassed a national subject matter.  North Carolina and Delaware have an equal, if not greater, claim to being the governing law of the agreement absent the choice of law provision.

Based on Sensus' Delaware citizenship, its national operations, Franklin's national work for Sensus, and Delaware's public policy of enforcing its citizen's contracts choosing Delaware law, it cannot reasonably be argued that Georgia has a **materially greater** interest in the outcome of this dispute than Delaware.  *See Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1049-50 (Del. Ch. 2006) ("[Delaware] citizens ought to be able to use our law as a common language for their commercial relationships, particularly when those relationships involve commerce and do not center in any material manner on the geography of a particular party's operational headquarters.").  As it held previously, this Court should find that Delaware law applies to the Agreement as agreed to by the parties.

3.      The Agreement is enforceable under Delaware law.

Under Delaware law, "[t]o be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities."  *Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, *2 (Del. Ch. April 19, 2006).  The parties agree that the Agreement's post-employment restrictions are enforceable under Delaware law.  In Franklin's Opening Brief filed with this Court, he conceded, "[I]t appears that a Delaware court applying Delaware law would enforce the covenants in this case…"  (D.I. 8, p. 8); *see also* (D.I. 21, p. 20).

The Agreement contains reasonable restrictions necessary to enforce Sensus' legitimate business interests and should be enforced by this Court.  The Agreement prohibits Franklin from

11

working for a Competitive Business in the Market for two years, from soliciting Sensus' customers or employees for two years, and from disclosing Sensus' confidential business information. (D.I. 3, Boyle Dec. Ex. A, ¶¶ 7(a), (b), (c); 9). The Market definition in the Agreement is tied directly to any location where Sensus', or Franklin's predecessor employer AMDS, conducted business. (*Id.*, ¶9). *See Research and Trading Corp. v. Pfuhl, Jr.*, 1992 WL345465, *12 (Del. Ch. Nov. 18, 1992)(Unpublished opinion)(upholding non-competition agreement with geographic restriction tied to employer's entire market or customer base).

Indeed, under Delaware law, courts generally look to ensure that the geographic area extends as far as the actual area of the plaintiff's business. *See Express Shuttle, Inc. v. Older,* 2002 WL 31458243, at *12 (Del. Ch. Oct. 23, 2002); *Faw, Casson & Co. v. Cranston,* 375 A.2d 463, 468 (Del. Ch. 1977). "The reasonableness of a covenant's scope is not determined by reference to physical distances, but by references to the area in which a convenantee has an interest that the covenants are designed to protect." *O'Leary v. Telecom Res. Servs., LLC,* 2011 WL 379300, at *5 (Del. Super. Ct. Jan. 14, 2011). In this action, the area requiring protection is Sensus' market area because Franklin can unfairly harm Sensus anywhere Sensus does business. *See Research Trading Corp. v. Pfuhl,* 1992 WL 345465, at *12 ([I]t is the employer's goodwill in a particular market which is entitled to protection. If this market, or more accurately, the employer's customer base, extends *throughout the nation,* or indeed even *internationally,* and the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location.").

Throughout his employment with Sensus, Franklin served in capacities that allowed access to, and interaction with, Sensus' customers and prospective customers. In his initial role as

12

Director of Business Development, Franklin was directly involved in marketing, business proposals, contract pricing, and margins throughout the Company. Franklin also assisted in the development of the FlexNet technology Sensus acquired from AMDS. (Boyle Dec. ¶ 9). In his later roles as Director of Sales and as a lead national sales employee for Sensus, Franklin was the lead or key contributor to the sale of approximately 15.4 million Sensus meters which represent the great majority of FlexNet meters ever sold. (*See* Creegan Dec. Ex. 1; Boyle ¶¶ 11-12). Because of Franklin's unique knowledge, Franklin continued to be involved in supporting sales opportunities outside his direct assignments, working with others on key accounts to develop sales strategies and technical solutions regarding the use and configuration of FlexNet technology. (Creegan Dec. ¶¶ 9, 13, 15). Franklin's job responsibilities included access to Sensus' operations, customers and prospective customers throughout his tenure with Sensus making the Agreement's reasonable restrictions necessary to enforce Sensus' legitimate business interests. Franklin's extensive knowledge of Sensus operations warrants the restrictions in his Agreement prohibiting him from working in any capacity for a competitor who does business in the areas Sensus operates or calling on any Sensus customer. *See Singh v. Batta Envtl. Assocs., Inc.*, 2003 WL 21309115, at \*2 (Del. Ch. May 21, 2003) (enforcing a two-year non-compete clause providing that defendant employee "shall not for himself or on behalf of any other person or corporation, other than [employer], engage in any business in competition with [employer] directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or otherwise."); *see also Simplexity, LLC v. Zeinfeld*, 2013 WL 1457726, at \*9 (Del. Ch. Apr. 5, 2013) (applying Virginia law and explaining that "[e]ven a non-compete that completely restricts an employee from working in *any* capacity for a competitor … is valid if it constitutes a reasonable means to protect legitimate business interests.") (emphasis in original).

13

4.     The Agreement has not "lapsed."

Citing no legal authority, Franklin previously contended that the Agreement has lapsed because Franklin was promoted above the position Sensus initially hired him for when the Agreement was signed. (*See* Franklin Opening Brief, D.I. **8, p. 8**). The changes to Franklin's job duties did not affect the Agreement's restrictive covenants.   Delaware law recognizes that parties may modify written agreements, even if the modifications are not formally written. *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 567-568 (D. Del. 1993) (modification is possible with all the requisites of a valid and enforceable agreement that leaves no doubt of the parties' intentions). Even after modification, the new contract does not destroy the old, unchanged terms. *Id.* To the extent Franklin's job duties changed during his tenure with Sensus, the unchanged terms of his Agreement, including the restrictive covenants, remained in place and are binding on him today.

## II.     **Sensus will suffer irreparable harm if Franklin is not enjoined.**

Sensus is incurring and will continue to incur irreparable harm if the Court does not order Franklin to comply with his contract obligations.   Understanding Franklin's important job duties at Sensus and his unfettered access to its confidential information, the parties stipulated that specific performance through injunctive relief is an appropriate remedy in the event of a breach of the Agreement. (Agreement § 7(e)).   "The public policy of [Delaware] permits parties to limit the importance of such counterfactual inquiries by agreeing that breaches of their contracts will create irreparable harm and should be remedied by injunctive relief." *Hough Associates, Inc. v. Hill*, 2007 WL 148751, *18 (Del. Ch. Jan. 17, 2007); *see also Simplexity, LLC v. Zeinfeld*, 2013 WL 1457726 at *14 (Del. Ch. April 5, 2013) (a contract term stating that a threatened breach would be irreparable at law "normally suffices to establish irreparable harm for the purposes of establishing the right to a preliminary injunction in this Court.").   Thus, the parties contracted that a restraining

14

order is necessary to prevent irreparable harm in the event of a breach of the Agreement and the Court should enforce this contract term.

Even in the absence of stipulated irreparable harm, the evidence demonstrates Sensus will suffer immediate and irreparable harm from Franklin's breaches. In his resignation letter, Franklin outlined his importance to Sensus' proprietary technology and the growth of the company. He states that he was critical to building Sensus' defining technology – FlexNet. (Creegan Dec. Ex. 1). Moreover, he was the lead or key contributor in the sale of approximately 15.4 million meters which "represent the great majority of FlexNet [meters] ever sold." (Creegan Dec. Ex. 1). Indeed, Franklin was directly involved in three of the largest sales contracts in Sensus' history. (Creegan Dec. ¶ 13 ). The largest of these sales involved Southern Company, an Atlanta-based company which provides utility services to customers in Georgia, Alabama, Mississippi, and Florida.

Sensus and its competitors provide services to large scale utilities. Each sales contract may be worth hundreds of millions of dollars. Because of the complexity of these contracts and the services provided, the contracts allow the utilities many opportunities to cancel the agreements. (*See* Creegan Dec. ¶ 16). Franklin has detailed knowledge of Sensus' pricing and cost structure, its customers' needs, Sensus' technological advances and limitations, and specific contract details. He has demonstrated his willingness to leverage this information against Sensus by virtue of his employment with SSN. Moreover, Franklin is clearly disgruntled with his employment at Sensus and motivated to cause it actual harm.[7] The loss of one or more of the contracts he was involved

---

[7]    Franklin states in his declaration, "I felt I had no choice but to resign my employment with Sensus due to a series of developments I considered degrading, humiliating, and entirely unjustified." (Franklin Dec. ¶ 13). He made similar statements in his resignation letter. (Creegan Dec. Ex. 1).

in would represent significant blows to Sensus' business, losses that would be irreparable given the monetary amounts at issue in these contracts and the length of agreements.

Finally, the fact that Franklin's employment with SSN ended following this Court's entry of the TRO and the Georgia court's stay of the Georgia proceedings pending final resolution of this matter does not alleviate the irreparable harm Sensus will suffer if a preliminary injunction is not issued. The United States Supreme Court has recognized that in situations that are "capable of repetition, yet evading review" a Court may enter an Order despite a change in circumstances. *Vencor, Inc. v. Webb,* 33 F.3d 840 (7th Cir. 1994) (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)). In *Vencor,* the Seventh Circuit Court of Appeals reversed the district court's denial of a motion for preliminary injunction in a noncompetition agreement case on grounds that the issue was moot due to the defendant's termination from employment by the plaintiff's competitor following oral argument on the preliminary injunction motion. The court in *Vencor* noted that the individual defendant had failed to meet his "heavy burden of proof" that there was no "reasonable expectation" that he would not work for a competitor of Plaintiff absent injunctive relief.

Here, as in *Vencor,* no evidence exists that Franklin intends to abide by the terms of his Agreement's restrictive covenants apart from this Court's entry of a preliminary injunction. The facts demonstrate Franklin would seek to work in violation of his restrictive covenant obligations if allowed do so, either returning to work at SSN or seeking employment with a different competitor of Sensus. Franklin demonstrated his intentions when he immediately went to work for SSN and filed a lawsuit in Georgia state court in direct contravention of the terms of his Agreement which require any action arising under the Agreement to be filed in Delaware. Sensus

will suffer irreparable harm and likely face repetitive litigation over different breaches by Franklin if a preliminary injunction is not issued.[8]

### III.  The balance of harms favors entering a preliminary injunction.

The harm to Sensus if an injunction is not entered is clear and difficult to mitigate: Sensus faces the prospect of losing multiple existing and prospective contracts worth hundreds of millions of dollars with no real chance of recovering a future judgment from Franklin for this amount.  On the other hand, Franklin's ability to earn a salary if he is ordered to comply with his contract obligations does not exceed Sensus' potential harm.  "To lose one's salary is a blow to any working person, but it is not ordinarily a blow that is legally irreparable."  *Burge v. City of Dover*, 1987 WL 12311, *10 (Del. Ch. June 8, 1987) (*citing Sampson v. Murray*, 415 U.S. 61, 89-92 (1974)).  *See also, Burton v. PFPC Worldwide, Inc.*, 2003 WL 22682327, *4 (Del. Ch. Aug. 4, 2003) (argument that employee could not pay health insurance premiums is not sufficient irreparable harm deny enforcement of restrictive covenants).  A party must show "more than simply the loss of money and what it can buy, but will suffer further specific consequences that the law would regard as irreparable."  *Id.*

Here, the undeniable evidence is that Franklin received significant compensation in conjunction with his execution of the Agreement and as a result of Sensus' purchase of AMDS, and was directly involved in the three largest deals in Sensus' history.  (Boyle Dec. ¶ 7; Creegan Dec. ¶ 13).  Under the terms of the Agreement, he is free to work outside the AMI industry in positions that do not violate his contract obligations.  The possibility that Franklin may not be able

---

[8]      Even if Franklin were not enjoined from competing in contravention of his Agreement, Sensus will continue to pursue damages for the breach of contract by his employment with SSN or any other employer,  even if the damages are nominal.  *Enzo Life Sciences, Inc. v. Adipogen Corp.*, *et al.*, 82 F. Supp. 3d 568 (D. Del. 2015)(awarding nominal damages in a breach of contract case).

to work for a few months as a result of this intentional misconduct does not outweigh the substantial threat to Sensus of his continued employment for SSN. Moreover, a strong public interest exists in enforcing non-compete agreements and promoting lawful competition. A preliminary injunction order is needed to prevent Franklin from irreparably harming Sensus.

## CONCLUSION

Based on the foregoing, Sensus respectfully asks the Court to enter a preliminary injunction order that requires him to comply with his obligations in the Agreement.

PROCTOR HEYMAN ENERIO LLP

*/s/ Samuel T. Hirzel, II*
Samuel T. Hirzel (# 4415)
Aron M. Nelson (# 5941)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
*Attorneys for Plaintiffs*

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Kevin S. Joyner
N.C. Bar No. 25605
Phillip J. Strach
N.C. Bar No. 29456
J. Allen Thomas
N.C. Bar No. 40119
4208 Six Forks Road, Suite 1100
Raleigh, N.C. 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
Kevin.Joyner@ogletreedeakins.com
Phil.Strach@ogletreedeakins.com
Allen.Thomas@ogletreedeakins.com

## CERTIFICATE OF SERVICE

I, Samuel T. Hirzel II, here by certify that on January 8, 2016, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Margaret M. DiBianca
> Pilar G. Kraman
> Rodney Square
> Young Conaway Stargatt & Taylor, LLP
> 1000 N. King Street
> Wilmington, Delaware 19801
> mdibianca@ycst.com
> pkraman@ycst.com

PROCTOR HEYMAN ENERIO LLP


/s/ Samuel T. Hirzel, II
Samuel T. Hirzel (#4415)
Aron M. Nelson (#5941
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
*Attorneys for Plaintiffs*